**Opinion filed November 19, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00297-CV

_____

## IN THE INTEREST OF I.M.A., A CHILD

**On Appeal from the 318th District Court**

**Midland County, Texas**

**Trial Court Cause No. FM-50853**

## M E M O R A N D U M   O P I N I O N

After a final hearing in this suit affecting the parent-child relationship, the trial court appointed Appellant and Appellee joint managing conservators of I.M.A., a child. The trial court also named Appellee as the person who had the right to determine I.M.A.'s residence. We affirm.

Appellee is I.M.A.'s biological mother. I.M.A was born in 2006. At the time of I.M.A.'s birth, both Appellee and I.M.A. tested positive for marihuana and cocaine. As a result, Child Protective Services told Appellee that, if she did not find

someone with whom to place I.M.A. and his older brother, CPS would remove the children from her home. Appellee contacted Appellant and asked her to take I.M.A. and his older brother. Appellant was a good friend of Appellee and was Appellee's older son's godmother. Appellant agreed to take the children, and on July 12, 2006, I.M.A. and his brother moved in with her.

A month or two after I.M.A. and his brother went to live with Appellant, Appellee spent one week in county jail in connection with a drug possession charge and a traffic violation. Appellee testified that she had been in county jail numerous times.

Subsequently, in 2007, when I.M.A. was a little over a year old, Appellee was sentenced to the penitentiary on a 2006 drug charge. Appellee was released from the penitentiary on May 24, 2008, just under one year after her confinement began. I.M.A. and his brother were living with Appellant at the time. During the time between the date that I.M.A. and his older brother went to live with Appellant and the time that Appellee went to the penitentiary, CPS assisted with visitation between I.M.A., his brother, and Appellee. The evidence shows that Appellee actually lived with them in Appellant's house for "[m]aybe three months." After that time, Appellee visited with her sons, and some of those periods of visitation included weekend periods.

About a week and one-half after Appellee was released from prison, I.M.A.'s older brother came to live with her. Appellee testified that I.M.A. continued to live with Appellant because Appellant had "some CPS papers that [Appellee] later obtained saying that [Appellant] had custody of both . . . boys until we obtained lawyers."

Appellant testified that, in May 2008, Appellee took possession of I.M.A.'s older brother from her. Appellee did not take I.M.A. at that time because, according

to Appellant, they had an understanding that Appellant was going to adopt I.M.A. and that Appellee was going to raise I.M.A.'s older brother.

In March 2009, however, Appellee, with the assistance of "the police," took I.M.A. from Appellant. At that time, according to Appellant, Appellee told her to "get a lawyer because she was going to fight for custody." I.M.A. lived with Appellee from that time until May 2009, when Appellee agreed to let I.M.A. stay with Appellant until they "came to court."

In July 2009, Appellee's parole was revoked as a result of an assault charge. Appellee testified that her boyfriend's mother filed the assault charge but later dropped it. Nonetheless, Appellee served the remainder of her sentence and was released around November 2009. She continued to have agreed/"handshake," regular visitation with I.M.A. into the fall of 2013.

On March 23, 2010, Appellant filed a suit affecting the parent-child relationship; I.M.A. was the only child made the subject of the suit. At the time that Appellant filed her lawsuit, no court orders had been entered regarding possession of I.M.A. The trial court conducted a final hearing on Appellant's petition on July 3, 2014.

At the hearing, Appellee confirmed that she was on cocaine and marihuana when I.M.A. was born. She also admitted that the two drugs were in I.M.A.'s system when he was born. She agreed that she had asked Appellant to take her children so that CPS would not take them and that Appellant had agreed to, and did, take the children. I.M.A. was two days old at the time, and his older brother was eighteen months old.

At some point, Appellant and Appellee began to have "communication" problems. Appellee testified that, because there were no court orders to the contrary, she took I.M.A. out of school in September 2013.

Ultimately, on October 2, 2013, after several continuances, the trial court conducted a hearing on temporary orders. At the conclusion of the hearing on temporary orders, the trial court appointed Appellant as I.M.A.'s temporary managing conservator. The trial court appointed Appellee as a temporary possessory conservator with "standard possession." On the Tuesday before the final hearing, I.M.A. was placed with Appellee for thirty days.

On appeal, Appellant complains that the trial court used the wrong standard when it appointed Appellee managing conservator with the right to determine I.M.A.'s residence. Section 153.131 of the Texas Family Code provides for a rebuttable presumption that "a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child" the subject of the suit. TEX. FAM. CODE ANN. § 153.131(a) (West 2014). The presumption applies "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." *Id.* If there is a "finding of a history of family violence involving the parents of a child," the presumption is removed. *Id.* § 153.131(b).

Section 153.373 of the Texas Family Code provides that the parental presumption is rebutted if the court finds that "the parent has voluntarily relinquished actual care, control, and possession of the child to a nonparent . . . for a period of one year or more, a portion of which was within 90 days preceding the date of . . . filing of the suit." *Id.* § 153.373 (West Supp. 2015). The court must also find that "the appointment of the nonparent . . . as managing conservator is in the best interest of the child." *Id.*

The trial court entered findings of fact and conclusions of law. In its Finding No. XI, the trial court stated, "Placement of children with natural parents or other siblings should be favored absent other extenuating circumstances." In its Finding

4

No. XIII, the trial court provided, "It is in the best interest of the child that [Appellee] be appointed Managing Conservator with the right to determine the residence of the child." Appellant argues that, by this language, the trial court indicated that it only applied the presumption that a child should be placed with biological parents. We disagree. We cannot say that, when the trial court included the words "absent other extenuating circumstances," in combination with its best interest finding, the court found anything other than that none of the conditions that would rebut the presumption existed in this case. In the absence of those "extenuating circumstances," the parental presumption would apply. We cannot say that the trial court applied the wrong standard in this case.

Appellant does not present legal and factual sufficiency arguments in the argument section of her brief. The only mention of sufficiency is in the prayer or conclusion portion of her brief. Nevertheless, we take Appellant's issue to be that the trial court used the wrong standard for the appointment of a managing conservator under the facts of this case and that, had it used the correct standard, the evidence would have been legally and factually insufficient to support the judgment. Because we have held that Appellant has not shown that the trial court erred when it utilized the parental presumption, even if Appellant properly raised sufficiency issues, we need not address them as they relate to Section 153.373. We overrule Appellant's issue on appeal.

We affirm the order of the trial court.


JIM R. WRIGHT

November 19, 2015                                    CHIEF JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

5